Argument not to exceed 15 minutes per side. Mr. Yasowitz, you may proceed for the appellant. Good morning. Good morning, your honors. May it please the court, my name is Andrew Yasowitz and I represent appellant Christopher Boggs. I'm reserving three minutes for rebuttal. Absent a request for medical care, only an obvious medical emergency suffices to put an officer on notice of a substantial risk of serious harm. In this case, when Officer Boggs saw Corey Cantrell, there was no obvious medical emergency. In fact, it's undisputed that in response to Officer Boggs asking Mr. Cantrell if he was okay, Corey Cantrell responded that he was fine. What does the record show that Boggs knew up to that point about Cantrell two months earlier? What other evidence is there in terms of knowledge of prior problems with him and overdoses or access to drugs? Well, he did have prior overdoses at the jail two months earlier. What I'm asking is knowledge of Boggs. Right. So I think Boggs did know about those overdoses, but what he also knew was that those overdoses stopped when drugs were So a couple months earlier in this short time span where Mr. Cantrell had these overdoses, they sent him to the hospital and Cantrell admitted that he had drugs in his rectum. Those drugs were extracted at the hospital and after that point, after the drugs were extracted, there weren't any other out of him, there hasn't been any overdoses for two months. And there wasn't another overdose until another inmate, Perry Steele, secreted drugs in his rectum, brought them into the jail and sold them. And so at the time of this exchange, you know, are you okay? You may look effed up. I'm okay. Did Officer Boggs, what is your position on whether Officer Boggs knew about the falling down, the kind of unruly behavior and the big goose egg? Yeah. So what Watson says, that's one of the other inmates, is that at the time that Boggs came in and asked him if he was okay, that Cantrell was acting up. He was hitting on Watson. District Court finds that Boggs knew about this. The falling down, the acting up. Right. Let's focus on the goose egg. Okay. Is there knowledge that Boggs knows, or actually that the goose egg had even happened, that incident had happened at that point? No. And neither Watson nor Kritzweiser. I mean, that's what we're basing this record on, is the statements of these two inmates. Neither of them say that Boggs saw the goose egg, knew about it. Certainly nobody complained about it. How about how it happened? I'm trying to figure out if it had even happened at all. I don't think you can determine that from their statements, if it had happened yet. Though if it's ambiguous, do you take the inference in the light most favorable to the plaintiffs? Well, it's... At least as I read the record, the temporal statements are ambiguous or nonspecific. Others might take it differently. Ambiguous evidence is a lack of evidence, not affirmative evidence. I mean, the goose egg, as everyone agrees, that's from a fall. Right? You hit your head on something. I think that... I don't know that Watson says where it came from. At some point, Watson says that there's a goose egg on Cantrell's head. But we're dealing in the realm of subjectivity. Right? This is not a 14th Amendment case. It's an 8th Amendment case. Cantrell's a convicted prisoner. So it's not enough... They've got to show that Boggs knew that there was a risk of serious physical harm to Cantrell and then disregarded that risk. I mean, I think you can infer. I would agree. I think you can infer that Boggs suspected that Cantrell may have taken drugs. He asks him if he's fucked up or if he's okay. But so what? That's not enough under this circuit's precedent to constitute knowledge of a substantial risk of serious physical harm. I mean, this court has repeatedly two cases that I can think of and that we cite in our brief. Weaver versus Chidone. The officer suspected that the decedent had ingested drugs, but they didn't see it. The decedent on the way to the jail in that case is throwing up, getting sick. One of the other suspects being transported says to the officer, you got to get this guy to the hospital. When he gets to the jail, that decedent in that case was mumbling, could not walk, had to be carried into the jail and was almost out of it. And the officer thought he was faking. And this court granted qualified immunity to that officer. I mean, look, I think your argument is fairly sound if we just had this exchange and if that's the universe of facts, the verbal exchange between Boggs and Corey, if those were the universe of facts we're dealing with. You're in a tricky spot here jurisdictionally, right? Because I'm trying to understand if you're disputing record supported facts and this, let me just tell you, the specific record supported facts that I'm trying to understand if you dispute are the big goose egg and the falling down. I don't dispute that. That's what they said. And that he knew that Boggs knew about these things. OK, that I would dispute because the inmates never said that. Both of these things falling down in the big goose egg. Correct. And I mean, I've I've reviewed these interviews. We filed them with the court so that you could review them. This is not and I'm going to get to your question in one second. This is not a case in which I am saying accept Officer Boggs's view of the facts and not the inmates. I didn't even cite Officer Boggs's affidavit except for the time that he worked in our brief. The. Our argument is that based on the statements of those two inmates, which the district court admittedly, that's what it relied on, even accepted as true, don't vitiate qualified immunity. That's a legal argument that this court has the jurisdiction to review DeNovo. Now, what did they say? I mean, I looked at these very closely yesterday. Critz Weiser, that's that's one of the inmates. And so he says that Boggs checks on them at medication pass. That's around seven o'clock p.m., three hours before the inmates summon medical assistance when he's in, you know, when he's unresponsive. Boggs asks Cantrell, are you fucked up? Can Cantrell answers that he's all right. The detective. The next question the detective asks. So it's a very specific question. Critz Weiser was he acting fucked up then, meaning when Boggs was in there? Critz Weiser responds. I mean, not really. He was just fucking nodding off. That's that's the extent of Critz Weiser's statement. So accepting plainest version of the facts, which is based on Critz Weiser's version of the facts, Cantrell tells Boggs that he's all right. And Cantrell's not really acting fucked up. You know, you're enjoying that. Just go with effed up. I think you're getting a little too much pleasure out of it. Maybe stay focused on your client a bit. I yeah, I I apologize. I only use it because those are the words that are in the record. So turning to to Watson, you know, Watson says Cantrell snorts the drugs. What is the point you're trying to make? I'm losing the thread here. I thought the question you got was this point of what inferences that the district court judge draw in terms of the goose egg in the fall. Was it something that we should assume Boggs had reason to know at the time or not? What did Judge Cole say about that in terms of inferences from this record? My answer on I don't believe that you what did Judge Cole say? Judge Cole said and what I judge Cole said that when Boggs was in that Cantrell was nearly catatonic. That's what I took from Judge Cole's opinion that he was nearly catatonic when Boggs when Boggs was there. And then he says I'm fine. Right. And which seems impossible. I'm just trying to understand what you're describing. Go ahead. Judge Cole also says that Boggs noticed the falling. Tell me if I'm wrong about that. I don't recall. I don't recall that from the opinion. Is this the phrase in the opinion? I'm looking at page 36. According to Corey's cellmates, this is the district judge relating this. Corey was either acting up, falling down or hitting cellmates or nearly catatonic. There's all those phrases during the nearly three and a half hour period. And that's I mean, I would say ambiguity is at what point in the three hour period is he stating that? But that's the inference the judge draws. I'm reading the judges. That's and that's exactly the point. The the judge, the district court is combining everything that happened in a three and a half hour period into what Boggs knew. Boggs was there. Might have led me to think you would focus on clearly established, which you pointed out earlier is a legal question which does not have the Johnson versus Jones issues and for which the district court judge has almost no citations. So. All right. So taking your cue, let's focus on clear, clearly established. The one case that the district court utilizes for clearly established law in this case is Burwell versus city of Lansing. And, you know, it's interesting that the court never discusses the facts of Burwell. It gives a general quotation from Burwell for clearly established law where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness. The denial of such aids constitutes the deprivation of due process. Well, certainly I would agree with that general proposition of law. But the Supreme Court instructs that general propositions of law are not sufficient for clearly established. It's got to be particularized to the facts of the case that a reasonable officer would know under the facts of this case that what he's doing violates the Constitution. That goes to the objective standard, the objective part of it, correct? I think whether it's the objective and subjective standards go to whether or not there is a constitutional violation. And then if there is a constitutional violation, you have to determine whether or not it's clearly established as a constitutional violation. And so in Burwell, interestingly, you know, three of the four jail officers in that case were granted qualified immunity in this court, including an officer that knew the decedent had epilepsy, had taken medication for epilepsy, saw the decedent lying on the ground, saw the decedent not react to a restless cellmate, and couldn't determine whether the decedent was breathing. The result? Qualified immunity. Even, you know, another officer saw the decedent in that case unconscious, unconscious on the floor, vomited, heard the decedent snoring, thought the decedent was sleeping. The decedent then, when the officer checked on the decedent again, hadn't moved in 85 minutes. Still thought the decedent was snoring and never, never looked in the cell to make sure the decedent was alive. The result? Qualified immunity. Now, compare those facts to this case in which you have the inmate specifically telling the officer, I'm okay. You know, the district court had said, well, that doesn't really matter if they're gushing blood from their head or they're hanging from the end of a rope. Well, okay, but those aren't the facts of this case. Cantrell wasn't gushing blood. He wasn't, you know, trying to kill himself. And so... But is it your position that even if, don't fight my hypothetical, but even if the facts were in front of us that there was a big goose egg that Boggs saw and that Boggs saw the falling and Boggs knew about this history of overdoses, do you still win under clearly established? I would say that we do. I mean, you know, just because I'm looking, is there an obvious medical emergency? Nobody says that there was at the time. What I think the district court did, to your point, Judge Boggs, was, you know, there did become an obvious medical emergency. He did become catatonic, but it wasn't at the time that Boggs... What I'm having a little trouble, or I want you to help me, is you said both below and on appeal that you do not contest the objective component that he had a serious medical need. And there's lots of case law that would say when the person has a serious medical need, then it must be dealt with until you get to the subjective component, whereas some of this about did he see it I would think was part of objective, but you stated that you waived it and the court said, nor could you fight the objective component. Well, and because I think the law, he died. You know, it's hard for me to say now that he didn't have a serious medical need. You're taking the law that the objective component is only from the outcome, not what was available at the time. I mean, that's, we didn't contest that for this appeal. I understand your point. Maybe we should have, but it still doesn't change that there's no subjective evidence of a serious medical need. Okay, thank you. From the other side. Good morning. Good morning. Your Honors, may it please the court, Brian Green on behalf of the plaintiff, Jesse Cantrell. Your Honors, in this particular case, we're dealing with an extremely narrow issue, whether Officer Boggs is entitled to qualified immunity. So the clearly established law here that the district court used, and you're free to add other clearly established law, is Burwell, and it's an inmate lying unconscious in a pool of his own vomit, and they did nothing to help him. And here we have, we'll call it the goose egg, evidence of falling, and he says, I'm fine. So that negligence, obviously regrettable given what happened, but really hard for me to understand how he violated clearly established law. So that's the focus, and tell me your response to that. Understood. In the Burwell case, Mr. Burwell had a suspended license and was pulled over, and in that case they specifically stated a fact finder may conclude that a prison official knew of substantial risk from the fact that it was obvious. And I understand exactly what you're saying here, that it was obvious. Lying unconscious in a pool of his own vomit. That's not this case. That is not this case. Judge Cole did not find facts remotely like that. That's correct. But what Judge Cole did was he looked at the totality of circumstances, and I think that's precisely what qualified immunity is not about. It's not the highest level of generality. You can go until you win. It's something just like this case, and lying in a pool of vomit is not this case, particularly when he says, I'm fine, I'm fine. That's only one part of the record, Your Honor. The issue here, though, is jurisdictionally, unless the ---- Jurisdiction has nothing to do with clearly established. Understood. But if there's a dispute of material facts, then ---- That's why I accepted, I'm giving you everything. Goose egg. He fell. He looks catatonic. I'm giving you every single one of those points. Okay. So ---- Find me the case that is like that. Well, in the Burwell case, there were, my understanding, there was four different police officers that were involved. Yep. I think the others got qualified immunity, didn't they? Understood. So why does that help you? Well, in that particular instance, though, in the Burwell case, a couple pieces. One, that was a 14th Amendment case, not an eighth. Okay? That's number one. Number two is, in viewing the situation in Burwell ---- Wait. Okay, wait. You're telling me it's not the right constitutional provision? No. Is it clearly established? No, no. I just wanted to point out that it was a different provision, that's all. Right. But do you understand why I'm now getting more worked up? Yes. Absolutely, I do. All right. But in this particular instance, Your Honor, there's a couple pieces that are important. One, it's not just in the Burwell case whether the party was laying in his own vomit. In this particular case, we have more than that with Mr. Boggs. They've only cited to the record of one statement that Mr. Cantrell said, when he said that he was okay. Okay? But Officer Boggs, given that he was swaying, he was moving around, he was punching people, had a duty to do more than that. And more importantly, Your Honor, in addition to that ---- You're granting that under the Constitution. Okay. You should assume this whole line of questioning agrees with you that Officer Boggs should have done more and violated the Constitution by not doing more. I'm accepting all of that. And I'm just asking, okay, we got it, giving you every single fact you want, every inference you want, just find me the case under the right constitutional provision where there was a constitutional violation. That's all I'm asking for.  So as it relates to that ---- If you retreat to Hope v. Peltzer, it's not going to help me. So try something else. That's where I was going to go, Your Honor. I know. Well, you can try it. I mean, I'm one of three, so I might be irrelevant in this case. Okay. Well, I can go to the Heeters and Bowers case, Your Honor. And in that case, it was the hours just before Mr. Heeters was shot by Mr. Bowers. That was a suicide case. And in that particular case, the court specifically stated that they have no power to review or in appeals based on a quarrel of facts. And I understand you're giving me all the facts, and I respect that. I think you're barking up the wrong tree there. Okay. But we also have Johnson v. Jones, okay? That's the same tree. That's understood. But in all those cases, they're still looked at on a fact-by-fact basis. So when you take a look at the specific facts and say, oh, any time someone's not laying in vomit, that there's automatically qualified immunity, that's a slippery slope because it's taking it to the extreme. I quite agree with the point you're making that it can't, you know, it's not Tuesday at 2 a.m. and the person crossed the international date line. Couldn't agree more that you don't go from too high a level of generality to that level of specificity. All I'm saying to you is I'm a little uncomfortable that Burwell provides the clearly established law. Now, maybe I'm wrong about that, but if you can find another case or have one. Well, we also have it in the Phillips v. Rome case, okay, that we have cited in our brief that the subjective component. So we have a myriad of cases that we have cited along those same lines that it is not strictly on the Burwell case. I understand that the court cited Burwell and did not get into the facts, but it doesn't obviate the law in the prior cases that we've cited in our briefing as well. What was the extent of the clearly established analysis by Judge Cole? I think that the extent was that he looked at it and indicated there was circumstantial evidence in this case, okay, based on the facts. That's not the clearly established. I'm asking what's the extent of it? I thought it was just a drive-by, there's Burwell, and it's clearly established. Well, I think it was more than that because he also goes into great detail in this indicating that he understands the changes in the Supreme Court, and he also cites the Farmer case as well. And in that particular instance, we also believe we meet that burden. He came to the conclusion that Boggs disregarded. And doing so, it's our belief that if you take a look at Burwell and also the Farmer case, that we have met the evidentiary requirements to create a genuine issue of material fact, okay? And when you also take a look at not just the timeline of what occurred here, Boggs falsified records. The judge looked at that. In doing that, that aids our facts for the reckless indifference. What we have here is that they have argued one single line that was stated by Mr. Cantrell. I'm fine. And when you give me all the facts in this particular case, when you give me the facts, you give me the fact that, A, we have in ignoring, well, let me back up, okay? We have a history here. Where was Corey Cantrell at the time of the death? He was in the booking area in cell number five. Why was he in the booking area? Why was he in cell number five? He was there because he had previous problems, and that was an area in which he could be watched more closely. And that was pursuant to Officer Roberts, his declaration, and why he was there. We also have a failure to conduct the checks. It was very suspicious that all of Boggs' checks were exactly on the minute, but they violated not only Ohio law but their own protocol because there was a 66-minute delay. I think we're just really talking about negligence here. Well, no, it's more than that because we have a total disregard here, and that's what the judge looked at was it was a total disregard. Had Boggs done his job, as opposed to just walking by and saying, are you okay, Corey Cantrell would not have died. That's really the issue here. It's much more than a negligence here. You're making the rounds point that he had a duty to visit the cell every half hour. Is that the point you're making right now? He was supposed to do it every half hour and falsify the records. Right, but we have quite a few cases. He should be fired. He should be penalized, all of that. But we have quite a few cases that say that doesn't establish an Eighth Amendment violation. He ignored the medical needs of Corey Cantrell. Tell me about that.  Hold on. I'm sorry. Go ahead. So you have this exchange, and Corey says, I'm fine. The cellmates apparently agreed with that assessment, self-assessment. I don't believe they agreed. I think that you have been presented by the appellant with only part of the argument as it relates to what Watson and Kritzweiser said. Watson had specifically indicated that there were issues, and we've cited to that in the record as well. Watson said, Corey is falling down, striking cellmates, nodding out, becoming nearly catatonic, and turning blue. And that's at page ID 2426. What do we know about Boggs' knowledge or observation of these things? Boggs, we have submitted Boggs' declaration as part of our evidence, and Boggs did not acknowledge that one way or another. He wasn't going to obviously admit that he knew of that and yet didn't take any particular action. And I think that's important. He doesn't even admit that he went into the cell at this point, does he? He does not. He does not admit that he went into the cell. So he did not do any of the things that he was supposed to do in order to properly check on Mr. Cantrell. And as Judge Cole stated, in a case where if somebody had cut their hands off and were bleeding and they say they're okay, the officer can't just simply ignore that. And that's essentially what we have here in this particular case. Boggs just ignored the need for a serious medical emergency. He did not do his job. And if we go to the point of saying that unless somebody's laying in their vomit or more than that, Your Honor, I think that... Was it even worse than that, unconscious, lying in a pool of vomit? It was. He was unconscious lying in a pool of vomit. That's the clearly established law here. I mean, this guy's conscious. Whatever else we're going to say, he's conscious. Understood that he was conscious. But he also had a serious medical issue that Boggs did not investigate and take care of. He turned his head to it. And that alone, understanding that it's a distinction from the case that you're citing from a case-by-case basis. And that's really how this needs to be looked at on this particular fact. It does need to be case-by-case, clearly established, and find a case like this one. Yes? Okay, and that is what we have cited in our brief, Your Honor, as it relates to the Phillips and Rhone case. I don't know that there is an exact case on this issue because they're all distinguishable from one another. I don't have a particular case where somebody had a goose egg, was swaying, was fighting, and had the exact same fact pattern. But to go back and look at one single particular issue without having been provided all the facts, when you give me all the facts in this case for purposes of this argument, it appears, and based on the well-reasoned 50-page opinion that Judge Cole wrote, and he went into great detail about dismissing. How many pages were there unclearly established on Officer Boggs? About four. I'm sorry, not unclearly established. Four pages in the order relating to Boggs, in particular. But he does not get to that issue and indicate clearly established. Well, I can pull it up. Do you want me to pull it up? Well, the qualified immunity part is two pages on 42-43, but what he does. His analysis on pages 30 to 32, and then he comes back to it again a little bit later, about page 37, I believe. Do we get to the clearly established analysis if there's a jurisdictional problem? I don't think you get to the. Give me your best argument on why we don't have jurisdiction. In this particular case, they are not giving us all the facts. What they have done is given us partial facts, and the facts that have been written both in the appellate brief and in the reply brief relate strictly to the one statement that Mr. Cantrell said where he indicated that he was okay. They don't discuss the other disputed facts, such as what Watson said, what Kritzweiser said. He said that he's willing to just take the Watson-Kritzweiser statements. This is what we use. We're not using Boggs' claims. We're using those statements. So I'm trying to understand what facts are supported by those statements. Maybe I'm not understanding the question. I guess I'm just trying to understand whether we have jurisdiction, right? I don't believe you do because in their briefing, they're not giving us all the facts. They have not. The only fact that they're giving us is that Mr. Cantrell said that he was okay. But we have all the facts. Right. But they're not. Hold on. So I believe in their brief they say, you know, we concede the plaintiff's facts for purposes of appeal as they have to for us to have jurisdiction. They say that, but they don't brief it as such because they don't address the issues of the contradictory witness statements of Watson and Kritzweiser. So the best reading of that for your client is what? The best reading of that for my client is that Watson indicated that Corey had issues, was swaying, had the goose egg, was swinging, punching. Indicated to Boggs? Indicated, well, there was a statement by Watson that said that Corey was impaired. He used more colorful language, but he said that, and what they're relying on is a subsequent statement where he said he was okay. But there's contradictory statements in Watson's own statement regarding what happened. I just want to go to your clearly established point, and here's the extent of the analysis. It's 42 to 43. I'm quoting. This is all it has. It's two sentences. As early as 1972, the Sixth Circuit has stated that where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process. Thus, this right is clearly established. You know, I'm not saying there's not a way for you to prevail on this point, but that analysis, I can promise you, is summarily reversible at the U.S. Supreme Court. That is not remotely talking about a case that's even within the window of this. It's just at the high level of generality of needing medical attention. That's precisely what the court has been telling us we can't do. So anyway, I just want to give you a chance to respond to that. That's the analysis. It's two sentences, and the level of generality is facts sufficient to indicate the need of medical attention. And I think that's too high. And even if it is too high, because there's still a dispute of fact here, I think it's beyond this court's jurisdiction to rule on it. Okay, so this is the idea that we clearly establish just a fact point rather than a law point. Correct. Okay, all right, great. Thank you.  I've been handling these types of cases for a while. I can't think of another case in which an inmate said he was okay, that this court or the U.S. Supreme Court has denied qualified immunity. And further, it's not my job to do it. The burden of proving clearly established law is on the plaintiff, not the defendant seeking qualified immunity. And the only case we've got is Burwell, a case with worse facts and officers that were granted qualified immunity. And that's what we've pointed out in our brief. And that's why in my opening argument, I cited the same general statement of law that the district court used, as you did, Chief Judge Sutton. In District of Columbia versus Wesby, the U.S. Supreme Court made it very clear that it can't be general statements of law. It's got to be what tells the officer in these circumstances that what he's doing or not doing violates the Constitution. And our argument is they haven't met that burden, their burden in this case, and that's one of the bases to reverse the district court's denial of qualified immunity. I did want to touch on a couple other things about conceding the facts. They say that Officer Boggs didn't conduct the checks properly. Agree, based on their version of the facts. I would concede that. He didn't do the checks properly, but in Burwell, they didn't do the checks properly either. And they were still granted qualified immunity. What this court has said about the checks is that it's a matter of negligence, and perhaps he should be subject to discipline if his supervisors believe that. But it's not a reason to deny qualified immunity. And for those reasons, we'd ask you to reverse the decision of the district court denying Officer Boggs qualified immunity, and thank you for your time. All right. Thanks to both of you. We appreciate your arguments. The case will be submitted, and the clerk may call the next case.